# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: } | | |
| BRIAN TAYLOR YORK, } | | |
| } | Case No. 09-41011-JJR-07 | |
| Debtor. } | | |

| | | |
|---|---|---|
| MELVIN FULGHUM and } | | |
| WILLIAM M. MASSEY, JR., } | | |
| } | | |
| Plaintiffs, } | | |
| v. } | Adv. P. No. 09-40082-JJR | |
| } | | |
| BRIAN TAYLOR YORK, } | | |
| } | | |
| Defendant. } | | |

## MEMORANDUM OPINION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SEEKING DENIAL OF DISCHARGE

The Plaintiffs filed a Motion for Partial Summary Judgment (AP Doc. 22, and herein, "MSJ") in this adversary proceeding in which they are seeking, *inter alia*, an order denying the Debtor a discharge pursuant to Section 727(a) of the Bankruptcy Code.[1] The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of fact and conclusions of law.[2] For the reasons stated below,

---

[1] 11 U.S.C. § 101 *et seq* and herein the "Code" or "Bankruptcy Code." All references to a "Section" are to a section, subsection, paragraph or other subdivision of the Code.

[2] All "Bankr. Rule" references are to the Federal Rules of Bankruptcy Procedure.

the Court is granting the Plaintiffs' motion and denying the Debtor a discharge.

FINDINGS OF FACT:

The Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on April 9, 2009. Thereafter he filed schedules and a statement of financial affairs ("SFA"). With respect to his schedules, he signed a declaration under penalty of perjury stating his schedules were true and correct to the best of his knowledge, information and belief, and he signed a similar declaration at the end of his SFA. The Plaintiffs accused the Debtor of making several material omissions from his schedules and SFA. The Debtor admitted that he was guilty of omissions, but in his Brief in Opposition to Plaintiff's Motion for Summary Judgment and supporting Affidavit he argued that the omissions should be excused, for the most part, as inadvertent and mere oversights.[3]

Part 13 of Schedule B required the Debtor to describe his interest in incorporated and unincorporated businesses; his response was "none." In part 18 of the SFA the Debtor was required to list the interest he held in incorporated and unincorporated businesses for the six preceding years; he listed Farmers Insurance (d/b/a) and York Wireless, LLC.[4] The Plaintiffs alleged and in fact the Debtor admitted that he was an organizer and managing member of B & B Properties, LLC, an Alabama limited liability company ("B&B"). The Debtor also admitted that his interest in B&B was omitted from Schedule B and the FSA. The Debtor sought to excuse this omission by stating that B&B was defunct, he was not actively involved in its business, and the omission was an oversight.

---

[3]Defendant's Brief in Opposition to Plaintiff's Motion For Summary Judgment and Affidavit of Brian Taylor York (AP Doc. 35, and herein, the "Debtor's Opposition").

[4]In Schedule I - Current Income, the Debtor listed his occupation as Mayor/Retailer and reported monthly income of $1,100. He reported his wife's monthly income as a teacher at $4,197.

Nonetheless, the Debtor admitted that he took control of the business of B&B in May and June 2008, that on September 9, 2008 he executed an application for a retail off-premises beer license on behalf of B&B, and that he signed a warranty deed on behalf of B&B on December 18, 2008 (less than 5 months before his petition date) under which B&B sold an unencumbered parcel of real estate to Rajesh Sadruddin Khaja. The tax paid to the Talladega County Probate Office when the deed was recorded indicated the consideration received for the deed was $59,000. The Debtor stated in his Opposition that he never received any of the consideration paid from the sale and does not know what happened to the sale proceeds.

Part 10 of the SFA required the Debtor to list property he transferred within two years immediately preceding the petition date. The Debtor admitted he failed to disclose that he and his business partner conveyed a parcel of real estate to John W. and Sandra Collier on November 17, 2008. The tax paid when the deed was recorded indicated the consideration was $40,500. The Debtor stated in his Opposition that he did not receive any of the sale proceeds. He explained that he omitted this transfer from his SFA because the property was sold pursuant to a lease/sale agreement entered into over ten years ago. Similarly, the Debtor admitted he conveyed real estate to George Sims on November 1, 2007 which was not listed in the SFA. According to the amount of the recording tax shown on the deed, the consideration paid was $10,000. The Debtor's only excuse for not disclosing the conveyance to Sims was that the omission was inadvertent and an oversight.

The Debtor disclosed in his SFA that he transferred "Stock in Talladega [sic] $31,000 Paid on debts" to a business partner, Daniel (Brent) Freeman. The Debtor later explained this was an error:

> I transferred $31,000 in stock of First National Bank to First National Bank. My petition lists this as a transfer of stock to Brent Freeman. However, this was an error. The stock was not transferred to Brent Freeman, but was in fact transferred to First National Bank. I received this money and I used this money to pay my bills. The transfer itself was disclosed and I apologize that it was shown to Brent Freeman to [sic] rather than to First National Bank for the fair market value.[5]

Finally, within 180 days following the petition date the Debtor became entitled to receive an inheritance from his mother's decedent estate; however, he failed to supplement his schedules to disclose the inheritance as required by Bankr. Rule 1007(h). His excuse for not supplementing his schedules was that his attorney contacted the trustee with the information.[6]

## BURDENS OF PROOF:

### *Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy adversary proceedings by Bankr. Rule 7056. Summary judgment may be granted to a movant "if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether summary judgment should be granted or denied, the facts are to be considered in a light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

### *Burden For Denial of Discharge Under Section 727(a)*

A chapter 7 debtor is presumed to be entitled to receive a discharge under Section 727(a).

---

[5] Debtor's Opposition at 10 - 11.

[6] The Plaintiffs made additional allegations in their MFS supporting their claim that the Debtor should be denied a discharge which are not scrutinized in this Order. A finding that a debtor should be denied a discharge under any one of the grounds under Section 727(a) is sufficient.

4

*See St. Laurent v. Ambrose (In re St. Laurent)*, 991 F2d 672, 680 (11th Cir. 1993) (exceptions to discharge construed strictly against creditor and liberally in favor of debtor). A creditor objecting to a debtor's discharge has the burden of proving by the preponderance of the evidence that the debtor is not entitled to receive a discharge under one of the exceptions to discharge found in Section 727(a)(1) – (12). *See* Bankr. Rule 4005; *see also Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008). After a creditor proves a prima facie case establishing one or more of the grounds for denial of discharge under Section 727(a), the debtor has the burden to reasonably explain why a discharge should nonetheless be granted. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984) ("[T]he party objecting to a discharge has the burden of proving the objection. . . . But once that party meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to explain satisfactorily the loss. . . . To be satisfactory, 'an explanation' must convince the judge. . . . Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory.") (citations omitted).

CONCLUSIONS OF LAW:

*Denial of Discharge Under Section 727(a)*

In their MSJ, the Plaintiffs assigned several grounds for denying the Debtor a discharge, including, *inter alia*, that he knowingly made a false oath or account in connection with his bankruptcy case, and he concealed property of the estate after the date of the filing of the petition. If either grounds is proven, then the Debtor should be denied a discharge.

Section 727(a)(4) states that a debtor is not entitled to a discharge in a chapter 7 case if he "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."

5

11 U.S.C. § 727(a)(4). *See also General Steel, Inc. v. Farris (In re Farris)*, AP No. 06-00059, BK No. 05-13253, 2008 WL 4830309 (Bankr. N.D. Ala. Sept. 30, 2008). The Debtor's schedules and SFA were executed under penalty of perjury–under oath; and by his own admission, the information reported in the schedules and SFA was not complete–it was false. Specifically, the Debtor failed to list his interest in B&B, a limited liability company in which he was a co-managing member. The Debtor was at least active in B&B's operations to the extent necessary to apply for a beer license and execute a deed in connection with a sale of its unencumbered real estate in consideration for what appeared to be $59,000 based on what was shown on the deed as the basis for determining the recording tax. Moreover, the Debtor admitted he manage B&B's affairs for two month shortly before he filed his petition. Yet he asks that his failure to disclose his interest in B&B be excused as an oversight because B&B was defunct.

The Debtor also failed to disclose two conveyances of real estate which on the face of the deeds (based on recordation tax) indicate the consideration paid by the buyers was over $50,000. And a $31,000 stock transaction the Debtor described in his SFA as being with a business partner was actually a transfer of stock to a bank. The Debtor asked that his incorrect description of the transaction be excused because he at least obliquely disclosed it. Indeed, there can be no question about the Debtor's schedules and SFA being false and made under oath. The real issue is whether he acted "knowingly and fraudulently."[7]

Omissions from the schedules and the statement of financial affairs in *Leo v. Armstrong (In re Armstrong),* AP No. 07-40078, 2009 WL 2413600 (Bankr. N.D. Ala. Aug. 5, 2009) were not unlike those in the instant case. This Court denied the debtor's discharge under Section 727(a)(4)

---

[7]Section 727(a)(4).

6

Case 09-40082-JJR    Doc 54    Filed 05/12/10    Entered 05/12/10 12:02:45    Desc Main
Document      Page 6 of 10

for numerous instances of failing to disclose various business interests and transfers. In reaching its decision to deny that debtor's discharge, this Court noted:

> The Debtor's Schedules and Statement of Financial Affairs were statements that he knew to be false and that were made under oath. The Debtor failed to disclose his interests, or transfers of his interests, in at least seven businesses. Further, the Debtor affirmatively answered in his Statement of Financial Affairs that he had no interests in businesses and had not had such interests within the last six years. . . . The omissions and inaccuracies in Debtor's schedules could not have been inadvertent due to their sheer numerosity. Assuming, at best, Debtor failed to thoroughly and accurately complete his schedules through mere oversight, it demonstrates Debtor's refusal to take the bankruptcy process seriously. There is no evidence before the Court that the numerous inaccuracies were completely unintentional . . . . Debtor has yet to amend his schedules to present an accurate picture of his financial affairs at the time he filed his bankruptcy case and the period immediately preceding. . . . Debtor's failure to completely and truthfully disclose his assets and transfers hampered the Trustee in carrying out his own duties of collecting and administering assets of the estate and could have prevented such assets from being discovered.

*Armstrong*, 2009 WL 2413600, at * 4.

In *Bishop v. Gamble (In re Biship),* AP No. 08-40078, BK No. 03-80636, 2009 WL 348844 (Bankr. N.D. Ala. Feb. 6, 2009) this Court was asked to reopen a chapter 11 case that had been dismissed five years earlier. The grounds alleged in support of reopening the case were that the debtor had failed to disclose substantial assets in his schedules before the dismissal. In *Bishop* this Court had the opportunity to express its opinion of why the credibility of the bankruptcy process rests in large part on accurate and complete schedules:

> Honesty and full disclosure are absolutely required for bankruptcy jurisprudence to function and have credibility among its participates and the public. Full disclosure in any bankruptcy case begins with accurate schedules . . . . Schedules are signed by debtors under penalty of perjury, and counsel signs bankruptcy petitions under the implicit representations of Rule 9011(b). The gauge for measuring the accuracy of bankruptcy schedules is not calibrated with the same tepid standard applicable to averments in a civil action complaint. Rather, bankruptcy schedules are representations of hard facts about which there should be little or no equivocation, and to the extent there is uncertainty, it should be explained. . . . "[T]here is no

7

> 'Oops' defense to the concealment of assets and . . . [such] facts establish a 'bad faith' case." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 370 (2007) (confirming bankruptcy court's refusal to allow chapter 7 debtor to convert to a chapter 13 because of debtor's misleading schedule of assets).
>
> \* \* \*
>
> The maxim that the submission of substantially accurate schedules by a debtor is necessary for a bankruptcy court to "perform in the usual manner its impartial task of adjudging cases that are presented for adjudication" cannot be seriously debated. In this case it appears accurate information was not available to the creditors or the Court because of substantial omissions from the Debtor's schedules.
>
> Accordingly, this Court finds the Debtor . . . was an officer of the Court when he filed his schedules, and from all appearances, was guilty of committing fraud upon this Court when he declared they were true and correct.

*Bishop,* 2009 WL 348844 at \* 3, \* 5 (footnote omitted).

Continuing his pattern of indifference to the requirement of full disclosure, when the Debtor acquired an inheritance from his mother's decedent estate within 180 days after his petition date, which became property of the estate under Section 541(a)(5), he failed to supplement his schedules with this information. Rule 1007(h) unequivocally states:

> If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case . . . .

The Plaintiffs allege the Debtor's failure to properly disclose his inheritance constitutes grounds under Section 727(a)(2)(B) for a denial of discharge. That Section provides that an individual debtor is not entitled to receive a discharge in a chapter 7 case if–

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of the filing of the petition[.]

8

When the Debtor became entitled to the inheritance within 180 days of the petition date, it became property of the estate. And if the failure to disclose the inheritance by complying with Bankr. Rule 1007(h) was an attempt to conceal such property from the trustee and creditors, then the Debtor should be denied a discharge under Section 727(a)(2)(B). The Debtor, who has yet to file a supplement under Bankr. Rule 1007(h), stated that his counsel sent a copy of his mother's will and life insurance policy to the trustee on August 11, 2009.[8] If noncompliance with Bankr. Rule 1007(h) were the only instance of the Debtor's failure to make required disclosures under the Code and Bankr. Rules, this Court would not deny his discharge for that reason alone. But failure to file the supplement on top of the other omissions from the schedules and SFA, if not evidence of actual fraud and concealment, further demonstrates the Debtors reckless disregard for the mandatory disclosure requirements in a bankruptcy case.

The Debtor is the mayor of a moderate-size city, a experienced businessman, an investor, and no stranger to real estate transactions. He obviously had the experience and intellect to adequately complete his schedules and SFA, and should have understood the consequences of non-compliance. Thus, the Court cannot conclude that the omissions in his schedules and SFA were mere oversights that should be excused. At best the omissions were evidence of the Debtor's reckless disregard for the requirements imposed by the Code and Bankruptcy Rules, and at worst were evidence of an intentional effort to hide information. If his conduct was not intentional, then it proves the Debtor haphazardly tossed together his schedules and SFA without taking seriously the obligation to disclose all required information. Such recklessness and indifference by the Debtor were tantamount

---

[8] Debtor's Response at 12. After learning of the inheritance, the trustee withdrew his report of no distribution. (BK Doc. 67).

to intentional misrepresentations, and are sufficient grounds for denial of discharge under Section 727(a)(4). *Sygenta Seeds, Inc. v. Eigsti (In re Eigsti)*, 323 B.R. 778, 786 (Bankr. M.D. Fla. 2005) (reckless indifference indicates the fraudulent intent required under § 727(a)(4)); *Segell v. Letlow (In re Letlow)*, 385 B.R. 782, 796 - 97 (Bankr. N.D. Ga. 2007) (false statements on schedules, and the failure to amend the schedules once the false statements were discovered, constituted at least a reckless disregard for the truth). Thus, consistent with this Opinion, the Court will enter an Order denying the Debtor a discharge in this case.

Dated: May 12, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge